UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE BRADFORD J. MARTIN,<br>　　Debtor.<br><br>―――――――――――――――――<br><br>PAT LABBADIA III,<br>　　Appellant,<br><br>　　v.<br><br>BRADFORD J. MARTIN,<br>　　Appellee.<br><br>―――――――――――――――――| No. 3:20-cv-939 (SRU) |

## ORDER

In October 2018, Bradford J. Martin filed a voluntary Chapter 7 bankruptcy petition. In January 2019, Pat Labbadia,[1] who is Martin's principal creditor, filed an adversary proceeding objecting to the discharge of certain of Martin's debts. During that adversary proceeding, Judge Ann M. Nevins of the United States Bankruptcy Court for the District of Connecticut granted (in large part) Martin's motion to dismiss Labbadia's complaint. After holding a bench trial on the few remaining claims, the Bankruptcy Court issued a memorandum of decision that resolved the outstanding issues in Martin's favor and entered judgment for Martin. Labbadia appeals from that judgment, but his only complaint is that the Bankruptcy Court erred in its motion to dismiss ruling. In my view, the Bankruptcy Court did not err, and so I **affirm** the Bankruptcy Court's judgment.

---

[1] Although Labbadia is proceeding *pro se*, he is a lawyer and so is not entitled to the special solicitude that courts normally accord to *pro se* parties. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such solicitude at all."); *Chevron Corp. v. Donziger*, 990 F.3d 191, 203 (2d Cir. 2021) ("[T]his Court does not give special solicitude to pro se litigants who are themselves attorneys.").

## I. Standard of Review

A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court in the same district. *See* 28 U.S.C. § 158(a). When reviewing bankruptcy appeals, the district court reviews conclusions of law *de novo* and applies the clearly erroneous standard to findings of fact. *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990). The district court may "affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or remand with instructions for further proceedings." *In re White*, 2017 WL 5501487, at *1 (D. Conn. Nov. 16, 2017) (citing former Fed. R. Bankr. P. 8013) (cleaned up).

## II. Background[2]

In 2013 and 2014, Labbadia served as counsel for Martin in divorce proceedings. Martin refused to pay the full amount of Labbadia's claimed attorneys' fees, so in June 2014 Labbadia sued Martin in state court to recover the balance due. That state court litigation was pending at the time Martin filed his Chapter 7 petition. At oral argument in this matter, the parties informed me that the state court case was dismissed in 2020 because it had been dormant for so long.

In October 2013, Martin moved out of his marital residence and into a property owned by his friend, Thomas Holthausen. That property was located in Westbrook, Connecticut, and so I will refer to it as the "Westbrook Property." Martin paid $500 per month in rent and was living there at all times relevant to this case. On September 18, 2018, Martin transferred $60,000 to Holthausen for a one-quarter interest in the Westbrook Property. I will refer to that transaction as the "Westbrook Property Transfer."

---

[2] Labbadia admittedly does not challenge any of the Bankruptcy Court's factual findings. *See, e.g.*, Labbadia's Br., Doc. No. 22, at 8 ("The standard of appellate review with respect to each of these issues is ***de novo*** review since they are issues of law, and not issues of fact."). My independent review of the record confirms that the Bankruptcy Court made no clearly erroneous factual findings. Thus, unless otherwise noted, I take the facts as the Bankruptcy Court found them in its motion to dismiss ruling and post-trial memorandum of decision. *See In re Martin*, 2019 WL 3543778 (Bankr. D. Conn. Aug. 2, 2019) (motion to dismiss); *In re Martin*, 2020 WL 2787681 (Bankr. D. Conn. May 28, 2020) (post-trial).

On October 1, 2018, which was just 13 days after the Westbrook Property Transfer, Martin filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. *See* Case No. 3:18-bk-31636 (AMN).  (I will refer to that docket as "BR-ECF.")  Along with his petition, Martin submitted Bankruptcy Schedules.  On Bankruptcy Schedule A/B (Property), Martin identified a $58,750 interest he held in the Westbrook Property.  BR-ECF, Doc. No. 1, at 10.  Martin also identified a $3,194 interest in a 2005 Honda Accord and a $13,147 interest in a 2014 Honda Accord.  *Id.* at 11.  Martin listed several other interests that are not at issue in this appeal.  On Bankruptcy Schedule C (Property Claimed as Exempt), Martin claimed as exempt pursuant to state law the entire values of the Westbrook Property[3] and the 2005 Honda Accord.[4] *Id.* at 16.  On Bankruptcy Schedule E/F (Creditors Who Have Unsecured Claims), Martin reported that Labbadia had a $43,134.38 disputed, unsecured claim against him.  *See id.* at 20.

On October 4, notice of Martin's Chapter 7 filing was sent to Labbadia by first class mail. *See* BR-ECF, Doc. No. 5.  That notice explained that the meeting of creditors, *see* 11 U.S.C. § 341, would take place on November 6.  *Id.*  The notice also explained that "[t]he law permits debtors to keep certain property as exempt," and if a creditor "believe[s] that the law does not authorize an exemption claimed, you may file an objection."  *Id.*  Finally, the notice explained that the filing deadline for objecting to Martin's claimed exemptions was "30 days after the *conclusion* of the meeting of creditors."  *Id.*

---

[3]     *See* Conn. Gen. Stat. § 52-352b(t) (allowing for homestead exemption up to $75,000 so long as that value is "the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it"). The Bankruptcy Court found that "[t]here is no dispute that" the Westbrook Property Transfer "represented the fair market value of the interest purchased." *In re Martin*, 2019 WL 3543778, at *2 (Bankr. D. Conn. Aug. 2, 2019). Labbadia does not challenge that conclusion on appeal.  Labbadia also does not claim that any lien encumbered Martin's interest in the Westbrook Property.

[4]     *See* Conn. Gen. Stat. § 52-352b(j) (allowing for motor vehicle exemption up to $3,500 so long as that value is "the fair market value of the motor vehicle less the amount of all liens and security interests which encumber it"). Again, Labbadia does not claim that the exemption that Martin claimed for the 2005 Honda Accord did not represent the fair market value of the vehicle or that any lien encumbered Martin's interest in the car.  In contrast, Martin claimed only a $1 exemption for the 2014 Honda Accord pursuant to Conn. Gen. Stat. § 52-352b(r), because an automobile loan encumbered the title.

3

The meeting of creditors commenced and concluded on November 6. Labbadia appeared at the meeting and questioned Martin about certain aspects of the Westbrook Property Transfer. However, in the following 30 days, Labbadia did not lodge any objections to the exemptions that Martin claimed, which included the entire value of Martin's interest in the Westbrook Property. On March 8, 2019, the Chapter 7 trustee filed a report of no distribution, meaning that Martin had no assets in his bankruptcy estate to distribute to any creditors. *See* BR-ECF, Doc. No. 20. In that report, the trustee explained that she had made a "diligent inquiry" into Martin's "financial affairs." *Id.*

Instead of filing an objection to Martin's claimed exemptions, on January 8, 2019, Labbadia filed an adverse proceeding against Martin and Holthausen. *See* Case No. 3:19-ap-3001 (AMN). (I will refer to that docket as "AP-ECF.") In February, Martin moved to dismiss the complaint. AP-ECF, Doc. No. 6. In April, Labbadia filed a motion to amend his complaint. AP-ECF, Doc. No. 31. In August, the Bankruptcy Court granted Labbadia's motion to amend and granted in substantial part Martin's motion to dismiss. *See In re Martin*, 2019 WL 3543778 (Bankr. D. Conn. Aug. 2, 2019) ("*In re Martin (MTD)*").

In its Motion to Dismiss Ruling, the Bankruptcy Court carefully parsed and considered the 12 counts in Labbadia's second amended complaint. According to the Bankruptcy Court, the essence of Labbadia's complaint appeared in count nine, where Labbadia claimed that Martin's asserted exemptions in the Westbrook Property and the Honda Accords were tainted with fraud, in violation of 11 U.S.C. § 522(o).[5] But, the Bankruptcy Court explained, those issues were off the table because Labbadia had failed to timely object. The Bankruptcy Court wrote:

---

[5] Section 522(o) reads, in relevant part: "For purposes of subsection (b)(3)(A) [which regards the homestead exemption] . . . , the value of an interest in . . . real or personal property that the debtor . . . claims as a homestead . . . shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of

4

> Turning next to the Westbrook Property, although the core of Labbadia's complaint is that Martin should not be permitted to transform non-exempt property into exempt property on the eve of bankruptcy, his time to make such an argument has passed. Labbadia did not file an objection to Martin's claimed exemptions. Instead he filed this adversary proceeding after the exemption objection deadline.
>
> . . .
>
> The deadline to file objections to Martin's claimed exemptions expired on December 6, 2018, and Labbadia had notice of the deadline but did not file his complaint with these objections until January 8, 2019. . . . When no objections were filed regarding Martin's claimed exemptions to the Westbrook Property and the Honda Accords, the property was "withdrawn from the estate (and hence from the creditors) for the benefit of the debtor."

*In re Martin (MTD)*, 2019 WL 3543778, at *6–7 (quoting *Owen v. Owen*, 500 U.S. 305, 308 (1991)).

Relatedly, the Bankruptcy Court dismissed Labbadia's complaint to the extent that it asserted state-law fraudulent conveyance claims based on the Westbrook Property Transfer. As the Bankruptcy Court explained: "In a Chapter 7 bankruptcy case, only the trustee is authorized to bring an action to avoid an allegedly fraudulent transfer." *Id.* at *13. Because Labbadia was not the trustee and did not satisfy the only narrow exception to that rule (derivative standing for a creditor, discussed further below), the Bankruptcy Court held that Labbadia "lacks standing to bring fraudulent conveyance claims." *Id.* at *14.

With respect to the property that *was* included in Martin's bankruptcy estate, the Bankruptcy Court dismissed Labbadia's complaint insofar as it raised an objection to discharge for fraudulent prepetition transfer pursuant to 11 U.S.C. § 727(a)(2)(A).[6] Although Labbadia did not specify "which specific transfer of property he relies on when he references § 727(a)(2),"

---

in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor . . . ."

[6] Section 727(a)(2)(A) reads, in relevant part: "(a) The court shall grant the debtor a discharge, unless . . . (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . , has transferred, removed, destroyed, mutilated, or concealed . . . (A) property of the debtor, within one year before the date of the filing of the petition."

5

none of the transfers that Labbadia mentioned—particularly, Martin's allegedly having accrued over $70,000 in debt from his daughter's time in college—was sufficient to deny discharge because Labbadia had not "allege[d] that any of these prepetition payments occurred within one year before the Petition Date." *Id.* at *7. Additionally, Labbadia's failure to identify the date of any allegedly fraudulent transfer was fatal because "§ 727(a)(2)(A) is subject to the Rule 9(b) particularity requirements." *Id.*

In December 2019, the Bankruptcy Court held a two-day bench trial regarding Labbadia's few remaining claims against Martin. In a May 28, 2020 post-trial memorandum of decision, the Bankruptcy Court resolved all remaining issues in favor of Martin and entered judgment that day. *In re Martin*, 2020 WL 2787681 (Bankr. D. Conn. May 28, 2020). After post-trial motion practice, Labbadia filed a notice of appeal on July 7, 2020. The notice of appeal was transferred to me on July 8, 2020. *See* Notice of Appeal, Doc. No. 1. Martin made a motion to dismiss the appeal for lack of subject matter jurisdiction based on Labbadia's allegedly late filing. *See* Mot. to Dismiss, Doc. No. 6. In September 2020, I denied Martin's motion to dismiss. *See* Order, Doc. No. 11; *see also In re Martin*, 2020 WL 5300932, at *3 (D. Conn. Sept. 4, 2020).[7] On April 16, 2021, I held a hearing regarding the merits of Labbadia's appeal. *See* Min. Entry, Doc. No. 26.

### III. Discussion

#### A. The Parties' Arguments

The gravamen of Labbadia's argument is that the Bankruptcy Court erred in ruling that Labbadia could not object to the Westbrook Property Transfer. *See* Labbadia's Br., Doc. No. 22,

---

[7] As I explained, the issues were "(1) whether July 6, 2020 was a 'legal holiday' within the meaning of the Federal Rules of Bankruptcy Procedure, and, if not, (2) whether, on July 6, 2020, the Bankruptcy Court's clerk's office was 'inaccessible' within the meaning of Federal Rule of Bankruptcy Procedure 9006(a)(3)." *In re Martin*, 2020 WL 5300932, at *3. I held that "July 6, 2020 was not a legal holiday, but the clerk's office was 'inaccessible' on that day, and so Labbadia's motion was timely filed on July 7, 2020." *Id.*

at 8 (articulating three issues presented on appeal—all of which regard the Westbrook Property Transfer—and claiming that the issues "are actually different ways of saying the same thing"). Labbadia repeatedly claims that the Westbrook Property Transfer was "not an arm's length transaction." *Id.* at 11, 20–22. Citing secondary sources and out-of-jurisdiction cases, Labbadia claims that the Bankruptcy Court's refusal to examine the merits of the Westbrook Property Transfer was "counterintuitive" and "incorrect" because Congress and the courts have recently become more skeptical of debtors' eve-of-bankruptcy conversions of nonexempt property into exempt property. *See, e.g.*, *id.* at 16–18, 22. Finally, Labbadia claims that, although he did not file a timely objection, that should be overlooked because enforcing any relevant time bar "would put form over substance" and "[p]rocedure over justice." *See id.* at 23.

In opposition, Martin argues that the Bankruptcy Court properly concluded that Labbadia could not challenge the Westbrook Property Transfer through an objection to discharge because the Westbrook Property was not part of Martin's bankruptcy estate. *See* Martin's Br., Doc. No. 23, at 17–21. Further, although Labbadia does not raise the challenge, Martin claims that the Bankruptcy Court's ruling with respect to Labbadia's section 727(a)(2) objection to discharge on the merits was also correct because Labbadia's complaint "falls far short of the requirements set forth in Federal Rules of Civil Procedure 8 and 9(b)." *Id.* at 21–27.

    B.  <u>Evaluation</u>

Labbadia argues on appeal that Martin should not have been able to shield certain nonexempt property from discharge by consummating the Westbrook Property Transfer. But he cannot sustain that argument. Thus, I affirm the Bankruptcy Court's judgment, which was the product of careful and thorough rulings.

        1.  The Westbrook Property was not a part of Martin's bankruptcy estate.

By simple operation of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, and the Federal Rules of Bankruptcy Procedure, Martin's interest in the Westbrook Property was not included in Martin's bankruptcy estate. Therefore, the Bankruptcy Court properly dismissed Labbadia's complaint to the extent that it objected to a discharge of Martin's debt related to the Westbrook Property Transfer.

When Martin filed a voluntary Chapter 7 petition, that created a bankruptcy estate that was comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," subject to certain exceptions. 11 U.S.C. § 541(a). However, the Bankruptcy Code allows debtors to exempt numerous types of property from their bankruptcy estates. *See id.* § 522(b). When a debtor claims an exemption pursuant to section 522(b), "[u]nless a party in interest objects, the property claimed as exempt . . . is exempt." *Id.* § 522(l). "The effect of exemption is to immunize the exempt property from seizure or attachment for satisfaction of debts incurred prior to the bankruptcy proceeding." *In re Scarpino*, 113 F.3d 338, 340 (2d Cir. 1997).

Federal Rule of Bankruptcy Procedure 4003 prescribes the procedure for objecting to a debtor's claimed exemption:

> Except as provided in paragraphs (2) and (3), a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

Fed. R. Bankr. P. 4003(b)(1). Rule 4003(b)(1)'s 30-day deadline is rigid and strictly enforced. The Supreme Court has held that Rule 4003(b)(1) "indicates that creditors may not object after 30 days" from the initial creditors' meeting "unless, within such period, further time is granted by the court." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643 (1992) (cleaned up); *see also Law*

8

*v. Siegel*, 571 U.S. 415, 424 (2014) ("[A] trustee's failure to make a timely objection prevents him from challenging an exemption.") (citing *Taylor*); 9 Collier on Bankruptcy ¶ 4003.03[1][a] (explaining that the 30-day period "may be extended only by the court and only if the extension is requested within the original time period").  If a party in interest fails to timely object to a debtor's claimed exemption, courts will not void the exemption.  *See Taylor*, 503 U.S. at 639 (refusing to allow trustee to make late objection to debtor's claimed exemption even though debtor "had no colorable basis for claiming the exemption"); *see also In re Bell*, 225 F.3d 203, 209–10 (2d Cir. 2000) (interpreting *Taylor*).

Applying the Rule 4003(b)(1) time bar to this case is straightforward.  On the same day he filed his Chapter 7 petition, Martin filed Bankruptcy Schedules that claimed exemptions for his full interest in the Westbrook Property and the 2005 Honda Accord.[8]  The section 341 meeting of creditors opened and closed on November 6, 2018.  There is no dispute that Labbadia had notice of the meeting:  He was there.  Any objection to Martin's claimed exemptions was due by December 6, 2018.  Labbadia did not make any objection by December 6, nor did he seek an extension of time within which to do so.  Thus, by operation of the above-mentioned statutes and rules, Martin's interests in the Westbrook Property and the 2005 Honda Accord were not part of his bankruptcy estate.[9]

---

[8]  As described above, *see supra* n.4, Martin claimed only a $1 exemption for the 2014 Honda Accord, pursuant to Conn. Gen. Stat. § 52-352b(r), because an automobile loan encumbered the title.

[9]  The Bankruptcy Court was also correct in holding that Labbadia's adversary proceeding—timely filed in January 2019—cannot somehow serve as a timely objection to Martin's claimed exemptions.  *In re Martin (MTD)*, 2019 WL 3543778, at *6–7.  Because the Federal Rules of Bankruptcy Procedure do not specify *how* a creditor or trustee should object to a debtor's claimed exemptions, some courts (outside this circuit) have held that an adversary proceeding may serve as a valid objection to a claimed exemption.  *See, e.g.*, *In re Lee*, 889 F.3d 639, 644–46 (9th Cir. 2018).  Vitally, however, "[t]o be an adequate substitute for a separate objection to exemptions . . . , any such proceeding must . . . be filed within the deadline set forth in Rule 4003(b)."  9 Collier on Bankruptcy ¶ 4003.03[2]; *see also In re Lee*, 889 F.3d at 645 (emphasizing that "the adversary complaint and proceeding met Rule 4003's procedural requirements," including the 30-day time bar).  Here, of course, Labbadia's adversary proceeding was filed outside the 30-day limit that Rule 4003(b)(1) establishes, and so it cannot serve as an adequate substitute.

Because Labbadia has forfeited his ability to object to Martin's claimed exemption in the Westbrook Property, I need not reach Labbadia's argument on the merits. However, I mention briefly that Labbadia's argument is weak and misconstrues the law regarding claimed exemptions. In his support, Labbadia focuses on changes made to section 522 of the Bankruptcy Code by a 2005 law: the Bankruptcy Abuse Prevention and Consumer Protection Act (the "BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005). Labbadia claims that "it is clear that after the BAPCPA, the conversion of [nonexempt into exempt] assets became more difficult and problematic." Labbadia's Br., Doc. No. 22, at 16–17. In fact, though, that is not the case.

"Congress enacted the" BAPCPA—which altered numerous provisions of the Bankruptcy Code—"to correct perceived abuses of the bankruptcy system," *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231–32 (2010), and to "ensure that the system is fair for both debtors and creditors," *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 85 (2d Cir. 2010) (cleaned up). As relevant here, the BAPCPA added two sections to the Bankruptcy Code—11 U.S.C. §§ 522(o) and (p). Section 522(o) limits the value of a debtor's interest in a claimed homestead exemption "to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the bankruptcy petition with the intent to hinder, delay, or defraud a creditor." 11 U.S.C. § 522(o). And section 522(p), by putting a limited cap on state-law homestead exemptions, was enacted to address the "mansion loophole by which wealthy individuals could shield millions of dollars from creditors by filing bankruptcy after converting nonexempt assets into expensive and exempt homesteads in one of the handful of states that have unlimited homestead exemptions." *In re Greene*, 583 F.3d 614, 619 (9th Cir. 2009) (cleaned up); *see also* 11 U.S.C. § 522(p).

Courts and commentators have been clear that the BAPCPA's additions to section 522 "do[] not change the longstanding policy of permitting intentional but nonfraudulent conversion of nonexempt property to exempt property on the eve of filing." David M. Holliday, *Reduction, Under § 522(o) of Bankruptcy Code, 11 U.S.C.A. § 522(o), of Value of Interest in Property Claimed by Debtor as Homestead*, 48 A.L.R. Fed. 2d 569 (2010); *see also* 4 Collier on Bankruptcy ¶ 522.08[4] (explaining that, "under section 522, the debtor may convert nonexempt property into exempt property immediately before the commencement of the case" and "[a]n eleventh hour acquisition of exempt property will not require disallowance of an exemption in the property"); *In re Shaw*, 622 B.R. 569, 578 (Bankr. D. Conn. 2020) ("The enactment of § 522(o) did not change th[e] long-standing policy" of allowing a debtor to intentionally, but non-fraudulently, convert nonexempt property into exempt property on the eve of bankruptcy filing); *In re Agnew*, 355 B.R. 276, 283–84 (Bankr. D. Kan. 2006) ("Section 522 continues to adopt the position favorably viewed by the Code drafters that the mere conversion of nonexempt property into exempt property, without fraudulent intent, does not deprive the debtor of exemption rights in the converted property.") (quoting 4 Collier on Bankruptcy ¶ 522.08[5]). Indeed, the cases on which Labbadia himself relies confirm the same view. *See, e.g.*, *In re Willcut*, 472 B.R. 88, 94 (10th Cir. BAP 2012); *In re Corbett*, 478 B.R. 62, 70–72 (Bankr. D. Mass 2012). Thus, Labbadia's argument regarding the effect of the BAPCPA, even asserted at a high level of generality, appears weak.

      2.      Labbadia does not have standing to assert a state-law fraudulent conveyance claim.

Labbadia claims that the Bankruptcy Court somehow relied on issues of "standing" in improperly refusing to deny Martin a discharge of his interest in the Westbrook Property. *See, e.g.*, Labbadia's Br., Doc. No. 22, at 8–9, 15. But that is incorrect. Labbadia had standing to

object to any discharge granted to Martin pursuant to section 727(a). *See* 11 U.S.C. § 727(c)(1). The Bankruptcy Court did not hold otherwise. Instead, as explained above, the Bankruptcy Court correctly held that Martin's interest in the Westbrook Property was not part of Martin's bankruptcy estate, and so Labbadia's objection to its discharge pursuant to section 727(a)(2)(A) was irrelevant. *See In re Bell*, 225 F.3d at 215 ("It is well-settled law that the effect of this self-executing exemption is to remove property from the estate and to vest it in the debtor."); *In re Mwangi*, 764 F.3d 1168, 1175 (9th Cir. 2014) ("The general rule is that exempt property immediately revests in the debtor."). Thus, Labbadia's arguments regarding "standing" as they relate to his ability to object to a discharge are off the mark.

However, construing Labbadia's arguments liberally (even though I need not), Labbadia may be objecting to the Bankruptcy Court's dismissal of counts seven and twelve of Labbadia's second amended complaint, which "assert[ed] fraudulent transfer claims under common law and Connecticut's Uniform Fraudulent Transfer Act (UFTA)." *In re Martin (MTD)*, 2019 WL 3543778, at *13. However, the Bankruptcy Court correctly dismissed those claims because Labbadia, as a creditor, does not have standing to bring them. *See id.* at *13–14.

Section 548 of the Bankruptcy Code "incorporates the law of fraudulent transfers." 5 Collier on Bankruptcy ¶ 548.01. As relevant, section 548 provides:

> The *trustee* may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted.

11 U.S.C. § 548(a)(1)(A) (emphasis added). As the Bankruptcy Court correctly noted, in a Chapter 7 case, "only the trustee is authorized to bring an action to avoid an allegedly fraudulent transfer." *In re Martin (MTD)*, 2019 WL 3543778, at *13; *see also Matter of Xonics*

12

*Photochemical, Inc.*, 841 F.2d 198, 202–03 (7th Cir. 1988) ("The right to invoke the[] provisions [in section 548(a)] belongs not to a particular unsecured creditor . . . but to the trustee (or debtor in possession) as the representative of all the unsecured creditors."); 5 Collier on Bankruptcy ¶ 548.02[1] ("Section 548 vests the power to avoid fraudulent transfers in the bankruptcy trustee."). Of course, here, Labbadia is not the trustee—he is an unsecured creditor. Thus, he has no standing to assert a claim for fraudulent transfer.

The Bankruptcy Court also correctly noted that "the Second Circuit has developed a limited exception to this general rule in the form of derivative standing." *In re Martin (MTD)*, 2019 WL 3543778, at *13. That exception applies only in limited circumstances,[10] and one requirement is especially salient here: To obtain derivative standing, a creditor or creditors' committee must obtain consent to bring the suit from both the trustee and the court. *See In re AppliedTheory Corp.*, 493 F.3d 82, 86 (2d Cir. 2007) (recognizing both consent of the trustee or debtor in possession and court approval as prerequisites); *In re Milazzo*, 450 B.R. 363, 372 (Bankr. D. Conn. 2011) ("Consent of the trustee is the quintessential element of [derivative] [s]tanding."); *In re David X. Manners Co., Inc.*, 2018 WL 1057140, at *1–2 (Bankr. D. Conn. Feb. 23, 2018); 5 Collier on Bankruptcy ¶ 548.02[4] ("Typically, a party other than the trustee or debtor in possession must obtain permission from the court before commencing the action."). In this case, there is no dispute: Labbadia did not obtain the trustee's consent or the Bankruptcy

---

[10] The Second Circuit has held that a creditors' committee might have derivative standing when the trustee or debtor in possession "refuses to bring suit," *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 70 (2d Cir. 2002) (citing *In re STN Enterprises*, 779 F.2d 901, 904 (2d Cir. 1985)), or, even if the trustee or debtor in possession has not refused to bring suit, when "(1) the committee has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings," *id.* (quoting *In re Commodore Int'l, Ltd.*, 262 F.3d 96, 100 (2d Cir. 2001)) (cleaned up).

Court's approval before bringing his fraudulent transfer claim. Thus, the Bankruptcy Court was correct to dismiss those counts of Labbadia's complaint.[11]

The upshot of all the above is that, by operation of law, Labbadia has lost his chance to challenge the legitimacy of the Westbrook Property Transfer. But that does not mean that the Westbrook Property Transfer escaped all scrutiny. In this case, the trustee and the Bankruptcy Court were fully aware that Labbadia claimed the Westbrook Property Transfer was fraudulent: Labbadia appeared at the section 341 meeting of creditors to question Martin, and the main substance of his entire adversary proceeding regarded that transfer. The trustee and the Bankruptcy Court thus had ample opportunity—and authority[12]—to inquire further about the Westbrook Property Transfer, investigate whether it may have been fraudulent, and punish any fraudulent behavior. Significantly, neither the trustee nor the Bankruptcy Court chose to do so. Thus, the potential inequity of Labbadia's waiver is substantially diminished (if not non-existent) in this case.

### IV.    Conclusion

---

[11]    Labbadia does not raise any other arguments concerning the Bankruptcy Court's rulings. More specifically, Labbadia does not challenge the Bankruptcy Court's dismissal of Labbadia's section 727(a)(2)(A) claims on the merits, which regarded debts that Martin allegedly accrued while his daughter was in college. Even if Labbadia did raise such an argument, though, in my view the Bankruptcy Court made no error of law or clear error of fact, and so I would affirm its ruling in that respect, too.

[12]    For instance, as described above, the trustee could have—but did not—bring an avoidance claim against Martin regarding the Westbrook Property Transfer. *See* 11 U.S.C. § 548(a)(1)(A); *In re Greenfield*, 65 F. App'x 549, 552 (6th Cir. 2003) (noting that even when trustee misses 30-day exemption objection deadline, trustee may bring "an action to avoid the transfer of property under § 548"). Second, it is likely that the trustee—but only the trustee—could have objected to Martin's claimed exemption in the Westbrook Property past the 30-day exemption objection deadline. *See* Fed. R. Bankr. P. 4003(b)(2) ("The trustee may file an objection to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption."); *id.* at advisory committee's note to 2008 amendment (mentioning explicitly that "[s]ubdivision (b)(2) extends the objection deadline *only for trustees*") (emphasis added). Third, the Bankruptcy Court could have imposed sanctions on Martin or otherwise disciplined him if it believed that Martin had engaged in fraud. *See, e.g.*, Fed. R. Bankr. P. 9011(c) (allowing for sanctions); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (allowing courts, under certain limited circumstances, to impose sanctions pursuant to their inherent authority); 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); 18 U.S.C. § 152 (allowing for criminal penalties of up to 5 years' imprisonment for fraud in bankruptcy cases).

The Supreme Court has recognized that several of the provisions and authorities mentioned above are available alternatives to discipline and address debtor misconduct when a party in interest has missed the exemption objection deadline in Rule 4003(b)(1). *See Taylor*, 503 U.S. at 644–45; *Siegel*, 571 U.S. at 427.

For the foregoing reasons, I affirm the Bankruptcy Court's judgment. The Clerk is instructed to enter judgment in favor of the appellee, Bradford J. Martin, and to close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 27th day of April 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
